**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

XIAOQIN REN,

Petitioner,

v.

MARKWAYNE MULLIN et al.,

Respondents.

Case No. 5:26-cv-05471-DFM

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

On September 18, 2026, Petitioner Xiaoqin Ren, an immigration detainee at the Adelanto ICE Processing Center represented by counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). The Petition alleges that Respondents arrested and detained Petitioner without notice or a hearing before a neutral decision-maker, in violation of the Due Process Clause of the Fifth Amendment, and that her detention is governed by 8 U.S.C. § 1226(a). See id. ¶¶ 48-60. Petitioner seeks immediate release or, alternatively, a custody hearing; declaratory relief; the return of personal property; an injunction against re-detention without a pre-deprivation hearing; and fees under the Equal Access to Justice Act. See id. at 12-13. The Court denied Petitioner's ex parte application for a temporary restraining order. See Dkt. 6. On September 25, 2026, Respondents filed a Response. See Dkt. 9 ("Response"). Petitioner did not file a reply.

For the reasons set forth below, the Petition is **GRANTED** in part.

## II. BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. See Response, Ex. A ("Form I-213") at 1.[1] On September 29, 2024, U.S. Customs and Border Protection admitted her at Los Angeles International Airport as a nonimmigrant visitor with authorization to remain until March 28, 2025. See id. at 1-3; Response, Ex. D ("NTA") at 1. On December 11, 2024, while her period of admission remained valid, she filed a Form I-589 application for asylum and withholding of removal with U.S. Citizenship and Immigration Services. See Form I-213 at 3; Petition, Ex. C. The application remains pending. See Form I-213 at 3; Petition ¶ 39.

Petitioner alleges that before her arrest she resided in Grants Pass, Oregon, that she is married to a United States citizen and has one biological child and one stepchild, and that she has no criminal convictions. See Petition ¶¶ 40-41.

On August 18, 2026, U.S. Immigration and Customs Enforcement ("ICE") conducted a targeted field operation at Terminal 2 of Los Angeles International Airport to locate Petitioner. See Form I-213 at 2. Agency systems had identified her as a biographic match to a person who had overstayed a prior admission and who would travel that day from Los Angeles to Medford, Oregon. See id. Officers located Petitioner at the airport, arrested her, and transported her to the ICE Los Angeles Field Office. See id.

Under a heading for mitigating factors, the arresting deportation officer wrote that Petitioner "does not appear to be a flight risk and a threat to public safety," and recorded that she has a pending Form I-589 and no gang ties. Id. at 3. The same section states that she expresses no fear of return to China and

[1] When citing Respondents' exhibits, the Court refers to the Exhibit's internal pagination. The Court otherwise refers to CM/ECF pagination.

has no known community ties precluding appropriate law-enforcement action. See id.

The same day, a supervisory deportation officer signed a Form I-200 administrative warrant for Petitioner's arrest, which was served on her in Los Angeles. See Response, Ex. B ("Form I-200"). At 3:23 p.m., the same officer issued a Notice of Custody Determination ordering that Petitioner be detained pending a final administrative determination in her case. See Response, Ex. C ("Custody Determination"). Petitioner checked the box on that form requesting that an immigration judge ("IJ") review the custody determination. See id. ICE also served her with a Notice to Appear charging her as removable under section 237(a)(1)(B) of the Immigration and Nationality Act as a nonimmigrant who remained beyond her authorized period, and directing her to appear before an IJ in Adelanto on October 6, 2026. See NTA at 1, 3; Form I-213 at 3.

Petitioner has been detained at the Adelanto ICE Processing Center since August 18, 2026. See Petition ¶ 44. Nothing in the record indicates that an IJ has held a custody redetermination hearing, and Petitioner has no final order of removal. See id. ¶ 45; Response at 2.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001). The parties agree, and the record confirms, that Petitioner was admitted, that she is charged as removable under section 237(a)(1)(B), and that her detention is discretionary detention under 8 U.S.C. § 1226(a). See Petition ¶¶ 23, 57; Response at 2; NTA at 1; Custody Determination.

**A. Exhaustion**

Respondents argue that, to the extent Petitioner has not requested a bond hearing from the immigration court, she has not exhausted her administrative remedies. See Response at 2. They contend that requiring her to do so is not futile because the Ninth Circuit's decision in Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026), has resolved within the circuit that noncitizens apprehended in the interior are detained under § 1226(a) and may seek release on bond. See Response at 2-3.

A noncitizen habeas petitioner ordinarily "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the [Board of Immigration Appeals ("BIA")] on appeal." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) (citation omitted). In determining whether exhaustion is required for a constitutional question, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995). When a petitioner does not exhaust, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo, 646 F.3d at 1160.

Generally, prudential exhaustion may be required when the following factors are met: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). Courts may nonetheless waive exhaustion if the petitioner demonstrates that

"administrative remedies are inadequate or not efficacious," "pursuit of administrative remedies would be a futile gesture," "irreparable injury will result," or "the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Notably, Petitioner requested IJ review of ICE's custody determination on the day of her arrest. See Custody Determination. Nothing in the record shows that a hearing has been held in the six weeks since.

More fundamentally, the Court declines to dismiss on exhaustion grounds Petitioner's claim that she was detained without pre-deprivation notice and a hearing in violation of due process. Even if the Court assumed that the Puga factors support requiring exhaustion as to this claim, the Court would waive exhaustion on futility grounds. A post-deprivation bond hearing would not address Petitioner's claim that she was not afforded constitutionally adequate procedural safeguards before she was deprived of her liberty. See Zhao v. Janecha, No. 26-5025, 2026 WL 2666865, at *3 (C.D. Cal. Sept. 9, 2026) ("The present Petition claims a deprivation of constitutional due process, a claim not within the jurisdiction of the immigration judge or the Board of Immigration Appeals."); Yu v. Giles, No. 26-4692, 2026 WL 2455945, at *3 (C.D. Cal. Aug. 21, 2026) (same); R.N.G. v. Semaia, --- F. Supp. 3d ---, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026) (same). That Rodriguez Vazquez confirms the availability of a § 1226(a) bond hearing means only that post-deprivation process is available, not that the immigration court can remedy the absence of pre-deprivation process.

## B. Petitioner's Due Process Rights Were Violated

Petitioner asserts that she holds a protected liberty interest, and that due process required notice and a hearing before Respondents arrested her. See Petition ¶¶ 49-55. The Court agrees.

The Fifth Amendment Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690, 693.

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if [s/]he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit have often found that this principle extends to noncitizens who have overstayed their visa. See Orozco-Salazar v. Warden, No. 26-4555, 2026 WL 2497334, at *3 (C.D. Cal. Aug. 25, 2026) (collecting cases); Tello Vazquez v. Mullin, No. 26-2039, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community.").

Respondents argue that Petitioner is properly detained because this is her first immigration detention and she was never previously released from immigration custody or paroled. See Response at 2. The cases cited above did not turn on a prior release from custody. Instead, they rest on the Government's decision to admit the noncitizen and then leave her at liberty after her authorized stay expired. See Tello Vazquez, 2026 WL 1911507, at *2. So too here. The Government admitted Petitioner after inspection, had her asylum application on file from December 2024, and took no action for nearly

seventeen months after her authorized stay expired. See Form I-213 at 2-3. Courts in this district have granted relief to noncitizens in the same position who, like Petitioner, had never been detained before their arrest. See Yao v. Janecka, No. 26-4735, 2026 WL 2666861, at *6 (C.D. Cal. Sept. 10, 2026).

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

Starting with the first Mathews factor, Petitioner's private interest in freedom from detention is substantial. Ninth Circuit precedent requires the Court to also consider "the process [Petitioner] received during this time" and "the further process that was available to [her]." Id. at 1208. It is undisputed that Petitioner did not receive a pre-deprivation hearing, and the record does not show that she has received any hearing since. Respondents point out that a bond hearing under § 1226(a) is available to her. See Response at 2-3. The Court accounts for that further process and will not "overstate the strength of [Petitioner's] showing." Rodriguez Diaz, 53 F.4th at 1207-08. But process that is available and has not occurred does little to reduce the weight of an interest already impaired by six weeks of detention. The first Mathews factor weighs in Petitioner's favor.

Turning to the second Mathews factor, the risk of erroneous deprivation is significant. Respondents took Petitioner into custody without pre-

deprivation notice or a pre-deprivation hearing. The decision to detain her was made by a supervisory deportation officer on the day of her arrest, see Custody Determination, and no neutral decision-maker has since assessed whether she presents a risk of flight or danger. Nothing in the record supports either concern. To the contrary, the arresting officer recorded that Petitioner "does not appear to be a flight risk and a threat to public safety." Form I-213 at 3. A pre-deprivation hearing would have allowed Petitioner to present her lawful admission, her pending asylum application, and her residence and ties before she lost her liberty. The second Mathews factor favors Petitioner.

The third Mathews factor requires the Court to consider the Government's interest, and the Court is mindful that in the immigration detention context, it "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." Rodriguez Diaz, 53 F.4th at 1208 (internal quotation marks and citation omitted). "This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." Id. However, while the Government has a "significant" interest in enforcing its immigration laws, see id. at 1209, that interest is diminished where, as here, Petitioner has a pending asylum application filed while she was in lawful status, lived in the community for nearly two years, and has no criminal history in this record.

The effort and cost required to provide Petitioner with procedural safeguards before detention—rather than simply detaining her without a hearing—is minimal. See E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide [p]etitioner notice and hearing on [alternatives to detention] violations

before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue"). Accordingly, the third Mathews factor weighs somewhat in Petitioner's favor.

On balance, the Mathews factors favor Petitioner. Respondents' detention of Petitioner without a pre-deprivation hearing violated her procedural due process rights.

**C. Remedy**

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy. After applying the Mathews test, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. See id. at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. See Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (C.D. Cal. 2025).

Here, nothing in the record suggests such urgency. ICE officers knew in advance that Petitioner would be traveling through Los Angeles International Airport on a domestic flight and planned a targeted operation to arrest her there. See Form I-213 at 2. The Form I-200 warrant was an administrative warrant issued by an ICE supervisory officer, not a judicial warrant, and it was not preceded by notice or any opportunity to be heard. See Form I-200. Petitioner has no criminal history in this record, no record of failing to appear before any court or agency, and an asylum application that has been pending since December 2024. See Form I-213 at 1-3; Petition ¶¶ 38-41. The Court finds that Petitioner's detention without a pre-deprivation hearing violated her due process rights and rendered her detention unlawful. When pre-deprivation

process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect. See Wamsley, 795 F. Supp. 3d at 1324.

Respondents argue that Petitioner is entitled at most to a bond hearing before an immigration judge under § 1226(a), or to a further bond hearing after 180 days of detention. See Response at 2-3. This argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, [s/]he will already have suffered the injury [s/]he is now seeking to avoid." Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); see also Wamsley, 795 F. Supp. 3d at 1324; Yao, 2026 WL 2666861, at *6 (ordering a noncitizen released where she was admitted to the United States on a nonimmigrant visa in 2024, timely applied for asylum, obtained work authorization, and was detained in July 2026 at Los Angeles International Airport upon arrival from a domestic flight without a judicial warrant, prior notice, or a hearing; collecting cases finding that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner will have already suffered the potentially erroneous detention). On this record, release is the appropriate remedy to place Petitioner in the position she would have enjoyed absent the due process violation. See Yao, 2026 WL 2666861, at *6.

The Court's order is limited to the procedural due process violation that has occurred. The Court declines to order Petitioner's additionally requested relief of an injunction prohibiting Respondents from re-detaining her "on the same asserted circumstances without constitutionally adequate notice and a pre-deprivation hearing before a neutral decisionmaker, absent a genuine emergency or materially changed circumstances." Petition at 13. The Court takes no position on whether, or under what circumstances, Respondents may lawfully seek to re-detain Petitioner in the future. That question is not squarely presented on this record and would depend on facts and circumstances not currently before the Court. This order addresses only the lawfulness of

Petitioner's current detention, which began on August 18, 2026, and which the Court concludes violates the Fifth Amendment. Nothing in this order shall be construed as limiting Respondents' ability to lawfully re-detain Petitioner in the future in compliance with all applicable authorities and upon affording Petitioner all process she is due.

Because the parties agree that Petitioner's detention is governed by § 1226(a), the Court declines to issue the requested declaration on that point, and because the release ordered here resolves the Petition, the Court does not reach Petitioner's alternative request for a custody hearing. The record contains no information about any property taken from Petitioner, and the Court declines to address that request on this record.

## IV. ORDER

For the foregoing reasons, IT IS ORDERED that:

1. The Petition (Dkt. 1) is **GRANTED** in part.

2. Respondents shall immediately release Petitioner Xiaoqin Ren (A# 242-403-908) from custody. Within three (3) days, Respondents shall file a status report confirming compliance.

3. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

4. Petitioner's remaining requests are **DENIED**.

Date: October 2, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge